IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

RICHARD GIANNETTI, as personal )
representative of the Estate of Mary )
Giannetti, deceased, )
         )
         Plaintiff, )
         )
v. )     Case No. CIV-04-926-BA
         )
THE CITY OF STILLWATER, a )
Municipal corporation and/or political )
subdivision, NORMAN McNICKLE, )
in his individual capacity and official )
capacity as Chief of Police for City of )
Stillwater, LINDELL MILLER, in his )
individual and official capacity, SCOTT )
WHITLEY, in his individual and official )
capacity, BRUCE MCDOUGAL, in his )
individual and official capacity, )
         )
         Defendants. )

## Order

    Mary Giannetti died while she was in police custody.  Her personal representative

sues under state law and 42 U.S.C. § 1983.[1]  On the state law claims, the Plaintiff attributes

---

[1]    In the complaint, the Plaintiff also invokes: (1) the Americans with Disabilities Act, 42 U.S.C. § 12101, and (2) the Fifteenth Amendment.  Complaint at p. 2 No. 10 (July 28, 2004).  The Fifteenth Amendment addresses the right to vote and the Americans with Disabilities Act concerns discrimination against disabled individuals.  *See* U.S. Const. amend. XV; *Colorado Cross Disability Coalition v. Hermanson Family Limited*, 264 F.3d 999, 1006 (10th Cir. 2001).  The applicability of the Fifteenth Amendment and the Americans with Disabilities Act are highly questionable.  But the Plaintiff refers to the two provisions only in the jurisdictional section of the complaint.  As a result, the Court does not interpret the complaint to assert the Fifteenth Amendment or the Americans with Disabilities Act as a legal basis for any of the causes of action.

the death to negligence.   And on the Section 1983 claim, the personal representative attributes the death to excessive force and inadequate training by the city and its police chief.

The Defendants move for summary judgment on the Section 1983 claim, arguing: (1) The force used was not excessive; (2) the training and supervision were adequate; (3) the alleged wrongdoing involved only negligence, which would not be actionable under Section 1983; (4) the officers are protected by qualified immunity in their personal capacities; and (5) Federal Rule of Evidence 702 would bar the Plaintiff's proposed expert witnesses from testifying about their theory of positional asphyxia.   As a matter of law, the force used was not excessive for purposes of the Fourth Amendment and all defendants are entitled to summary judgment on the claims involving 42 U.S.C. § 1983.

On the state law claims the City of Stillwater argues that it enjoys immunity, and all of the defendants ask the Court to decline supplemental jurisdiction in light of the award of summary judgment on the federal claims.   The Court will exercise supplemental jurisdiction and grant summary judgment to the city on the state claims.

<u>Standard for Summary Judgment</u>

Summary judgment is necessary when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2]   The Court makes this determination by viewing the evidence in the

---

[2]      Fed. R. Civ. P. 56(c).

light most favorable to the non-movant.[3]  But when only one reasonable outcome exists,

summary judgment is necessary.[4]

## Section 1983 Claims

All defendants are entitled to summary judgment on the Section 1983 claims.

---

[3]      *See*, *e.g.*, *Faustin v. City*, 423 F.3d 1192, 1198 (10th Cir. 2005).

[4]      *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Quoting *Conley v. Gibson*, the Plaintiff states that "[s]ummary judgment should not be granted 'unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Plaintiff's Brief in Support of Response to Defendant's Motion for Summary Judgment at p. 5 (Dec. 19, 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  In *Conley v. Gibson*, the Supreme Court addressed an argument for dismissal based on the absence of a claim on which relief could be granted.  *Conley v. Gibson*, 355 U.S. 41, 43, 45-46 (1957).  The case did not involve a question about the availability of summary judgment, and the standards are different for the two types of motions.  As observed in one leading treatise:

> The focus on the facts as pleaded by plaintiff in the complaint and the ordinarily early juncture of the motion to dismiss for failure to state a claim, have led courts to describe the movant's burden on a motion to dismiss as "very high," often citing the famous but misleading language of the Supreme Court's important *Conley v. Gibson* case, stating that a claim should not be dismissed pursuant to Rule 12(b)(6) unless it appears "beyond doubt" that the plaintiff can prove no set of facts in support of its claims.  Because of the heavy burden placed on movant to show the absence of a conceivable right to relief in a complaint, Rule 12(b)(6) motions provide far less opportunity for eliminating claims than do summary judgment motions.  The doctrine surrounding Rule 12(b)(6) motions remains highly deferential to the claimant . . . . [T]his is no longer the case for summary judgment, as the Supreme Court's 1986 trilogy of cases has officially disapproved of undue reluctance to grant summary judgment motions.

11 James Moore, *Moore's Federal Practice* § 56.30[3][b], at 56-219 - 20 (3d ed. 2005) (footnotes omitted).

I.      Constitutionality of the Force Used: Claims Against Lindell Miller, Scott Whitley, and Bruce McDougal

Invoking 42 U.S.C. § 1983, the Plaintiff claims excessive force.  As a matter of law, however, the force against Ms. Giannetti did not violate the federal constitution.

The Plaintiff's claim triggers the Fourth Amendment, requiring an examination into the objective reasonableness of the force used.[5]  This inquiry requires an assessment of the officer's conduct "'from the perspective of a reasonable officer on the scene,' recognizing the fact that the officer may be 'forced to make split-second judgments' under stressful and dangerous conditions."[6]  The pertinent factors include the severity of Ms. Giannetti's offense, the degree of potential threat that she posed to the safety of the officers, and Ms. Giannetti's efforts to resist or evade arrest.[7]

When the struggle began, Ms. Giannetti was suspected only of an attempt to elude the police.[8]  But the Plaintiff's theory of excessive force begins only after she had been placed face-down on the floor.  As the events unfolded, the Plaintiff allegedly complained of difficulty in breathing.  But by that time, the undisputed evidence is that the Plaintiff had hit a female officer and had kicked a second official two times.  Thus, during the escalating struggle, the Plaintiff's offenses had turned from an attempt to elude the police to three

---

[5]      *See Marquez v. City*, 399 F.3d 1216, 1220 (10th Cir. 2005).

[6]      *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (citation omitted).

[7]      *See Graham v. Connor*, 490 U.S. 386, 396 (1989).

[8]      *See* Deposition of Lindell Miller at p. 40 (May 16, 2005).

discrete acts of assault on law enforcement officers.  These assaults created a dangerous situation for the officers, as Ms. Giannetti was unquestionably resisting their attempt to remove the pantyhose and change her into jail clothing.  Accordingly, all of the pertinent factors support the use of force to restrain Ms. Giannetti even after she had complained of difficulty in breathing.

The Seventh Circuit Court of Appeals addressed similar circumstances in *Estate of Phillips v. City*, 123 F.3d 586 (7th Cir. 1997).  There the court concluded as a matter of law that police officers had not violated the Fourth Amendment when they restrained an arrestee in a prone position and he died from positional asphyxiation.[9]  The following factors proved to be dispositive there:  (1) the reasonableness of the decision to restrain the arrestee; (2) the reasonableness of the decision to place the arrestee in a prone position once he continued to kick at the officers; and (3) the undisputed evidence that the officers were watching the arrestee's reactions while he was in a prone position.[10]

All of these factors are also present here.  As in *Estate of Phillips v. City*, the struggle with police escalated in distinct stages involving the decisions to restrain the individual and to restrain her in a prone position when she continued to resist the police.  At both stages, the trier of fact would lack any reasonable basis to characterize the force as excessive.

---

[9]     *Estate of Phillips v. City*, 123 F.3d 586, 591-95 (7th Cir. 1997).

[10]     *Estate of Phillips v. City*, 123 F.3d 586, 591-95 (7th Cir. 1997).

The undisputed evidence is that: (1) when Mary Giannetti entered the "Hazardous Material Room," she had her hands and legs free and was accompanied only by a smaller female officer;[11] (2) prior to the application of any restraint, the female officer said that she had been hit;[12] (3) Officer Whitley placed handcuffs on Ms. Giannetti only after she had reportedly struck the female officer;[13] (4) Officers Miller, Whitley, and McDougal placed Ms. Giannetti on the floor to conduct a pat-down search only after she had struck one officer and fallen to her knees on her own initiative;[14] (5) after being eased to the floor, Ms. Giannetti continued to struggle and kicked Officer Miller twice;[15] and (6) during the struggle,

---

[11]    Affidavit of Officer Lindell Miller at p. 3 No. 11 (Nov. 21, 2005); Deposition of Lindell Miller at p. 52 (May 16, 2005); Affidavit of Lt. Bruce McDougal at p. 3 No. 13 (Nov. 21, 2005); Affidavit of Detention Officer Scott Whitley at p. 2 Nos. 7-8 (Nov. 21, 2005); Affidavit of Talara Stumbaugh at pp. 1-2 Nos. 7-9 (Nov. 21, 2005); Deposition of Talara Stumbaugh at pp. 31-32 (May 16, 2005); *see also* Plaintiff's Brief in Support of Response to Defendant's Motion for Summary Judgment at p. 3 No. 9 (Dec. 19, 2005) (admitting Defendants' Undisputed Fact No. 12).

[12]    Affidavit of Officer Lindell Miller at p. 3 No. 12 (Nov. 21, 2005); Deposition of Lindell Miller at pp. 53-54 (May 16, 2005); Affidavit of Detention Officer Scott Whitley at pp. 2-3 No. 9 (Nov. 21, 2005); *see also* Plaintiff's Brief in Support of Response to Defendant's Motion for Summary Judgment at p. 3 No. 9 (Dec. 19, 2005) (admitting Defendants' Undisputed Fact No. 13).

[13]    Affidavit of Detention Officer Scott Whitley at pp. 2-3 No. 9 (Nov. 21, 2005); Deposition of Scott Whitley at p. 38 (May 16, 2005); *see also* Plaintiff's Brief in Support of Response to Defendant's Motion for Summary Judgment at p. 3 No. 9 (Dec. 19, 2005) (admitting Defendants' Undisputed Fact No. 13).

[14]    Affidavit of Officer Lindell Miller at p. 3 No. 12 (Nov. 21, 2005); Deposition of Lindell Miller at p. 54 (May 16, 2005); Affidavit of Detention Officer Scott Whitley at pp. 2-3 No. 9 (Nov. 21, 2005); Deposition of Scott Whitley at pp. 40-41 (May 16, 2005); Deposition of Talara Stumbaugh at pp. 38-39 (May 16, 2005); *see also* Plaintiff's Brief in Support of Response to Defendant's Motion for Summary Judgment at p. 3 No. 9 (Dec. 19, 2005) (admitting Defendants' Undisputed Fact No. 13).

[15]    Affidavit of Officer Lindell Miller at p. 4 Nos. 13 & 15 (Nov. 21, 2005); Deposition of Lindell Miller at pp. 60, 83 (May 16, 2005); Affidavit of Lt. Bruce McDougal at p. 3 No. 18 (Nov. 21, 2005); *see also* Plaintiff's Brief in Support of Response to Defendant's Motion for Summary

Officer Miller focused on Ms. Giannetti's breathing process once she complained of difficulty and could see her back and side moving as she inhaled and exhaled.[16]

At each step, one might question whether the officers had a better way of handling the situation. But the issue here is whether a reasonable fact-finder could conclude that the force used against Ms. Giannetti was excessive based on the circumstances existing at that time.[17] The Court answers in the negative. The undisputed evidence reflects an escalating struggle and, with the increased intensity of the risk to the officers, they responded with additional restraint. The result is tragic, but no reasonable trier of fact could attribute Mary Giannetti's death to excessive force at any point in the escalating struggle.[18]

---

Judgment at p. 3 No. 9 (Dec. 19, 2005) (admitting Defendants' Undisputed Fact Nos. 14 & 16).

[16]     Affidavit of Officer Lindell Miller at p. 5 No. 20 (Nov. 21, 2005); Deposition of Lindell Miller at pp. 71-72 (May 16, 2005); Affidavit of Talara Stumbaugh at p. 3 No. 31 (Nov. 21, 2005). The Plaintiff asserts that the "Defendants [had] apparently disregarded" Ms. Giannetti's complaints about difficulty in breathing and "admit that they placed pressure on her back and neck." Plaintiff's Brief in Support of Response to Defendant's Motion for Summary Judgment at p. 15 (Dec. 19, 2005). With this statement, the Plaintiff supplies no authority and he elsewhere admits that once Ms. Giannetti voiced her complaints, Officer Whitley "raised his hands off of her back to indicate that he was not applying any pressure on her back" and Officer Miller "specifically focused on watching her breathing process." *Id.* at p. 3 No. 9 (admitting Defendants' Undisputed Fact Nos. 16 & 26).

[17]     *See Wilson v. Meeks*, 52 F.3d 1547, 1554 (10th Cir. 1995).

[18]     All parties rely extensively on case law involving hog-tie restraints. In *Cruz v. City*, the Tenth Circuit Court of Appeals held that when an arrestee is in a state of diminished capacity, a hog-tie restraint is considered excessive. *Cruz v. City*, 239 F.3d 1183, 1188-89 (10th Cir. 2001). But the Plaintiff does not allege the use of a hog-tie restraint against Ms. Giannetti.

The absence of a hog-tie restraint is significant. Like the Tenth Circuit, the Fifth Circuit Court of Appeals has held that hog-tie restraints may be considered excessive when the arrestee is in a state of excited dilirum. *Gutierrez v. City*, 139 F.3d 441 (5th Cir. 1998). The court declined to extend this prohibition to other circumstances in which an arrestee dies from asphyxiation while being restrained in a prone position. *Wagner v. Bay City*, 227 F.3d 316, 323 (5th Cir. 2000) ("First,

In part, the Plaintiff relies on Ms. Giannetti's statements that she could not breathe, arguing that the officers had violated the federal constitution by failing to properly tend to these complaints. But the claim involves excessive force, rather than a failure to provide medical attention. And the Supreme Court has required application of the Fourth Amendment, rather than the Fourteenth Amendment's Due Process Clause, to all constitutional claims involving excessive force in the course of an arrest.[19] As a result, the issue here is whether the officers violated the federal constitution through the force used to restrain Ms. Giannetti, rather than the adequacy of the response once she complained of difficulty in breathing.

The Plaintiff also questions the officers' insistence on changing Ms. Giannetti into jail clothing and the removal of her pantyhose once she was placed in handcuffs. But the issue is not whether the officers had acted ideally with the benefit of 20-20 hindsight.[20] Instead,

---

and perhaps most importantly, . . . [the decedent] was not 'hog-tied,' and, as a result, the 'very limited' holding of *Gutierrez* cannot support a finding that Hadash and Mirelez violated clearly-established law when they handcuffed Gilbert and placed him in the patrol car."). Similarly, the Western District of Oklahoma has declined to extend the holding in *Cruz* outside of the hog-tying context. *See*, *e.g.*, *Nichols v. Davison*, 2005 WL 1950361, Westlaw op. at 2-3 & n.7 (W.D. Okla. July 26, 2005) (unpublished op.) (granting summary judgment to law enforcement officers, reasoning in part that the decedent had been placed in a "hobble" rather than a "hog-tie" as defined in *Cruz v. City*).

[19]     *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989).

[20]     *See Graham v. Connor*, 490 U.S. 386, 396 (1989).

8

the issue is whether the force used was unconstitutional.[21]  By the time that the officers attempted to remove the pantyhose, Ms. Giannetti was in the midst of a struggle with the officers[22] and had already struck a female officer and kicked a male officer two times, knocking him the second time into a locker.[23]

Finally, the Plaintiff relies on the police department's possession of training materials involving positional asphyxia.  As the Plaintiff points out, the Ninth Circuit Court of Appeals has held that a police department's guidelines may bear on the reasonableness of the force that is used.[24]  But for two reasons, this principle does not support the existence of a genuine issue of material fact.  First, the Tenth Circuit Court of Appeals has rejected the Ninth Circuit's view and held that the violation of a police department policy is "irrelevant" in a

---

[21]     *See Myers v. Oklahoma County Board of County Commissioners*, 151 F.3d 1313, 1320 (10th Cir. 1998) ("actions leading to a confrontation . . . must be more than merely negligent to be 'unreasonable' for purposes of the Fourth Amendment inquiry" (citation omitted)); *see also Wilson v. Meeks*, 52 F.3d 1547, 1554 (10th Cir. (1995) (rejecting the plaintiffs' argument that the force was excessive because a defendant officer had "caused the final confrontation").

[22]     In response to the summary judgment motion, the Plaintiff asserts that Ms. Giannetti had been "controlled the minute she was handcuffed and put on the ground." Plaintiff's Brief in Support of Response to Defendant's Motion for Summary Judgment at p. 8 (Dec. 19, 2005).  This assertion is not accompanied by any authority.  Elsewhere, the Plaintiff acknowledges that after Ms. Giannetti had been handcuffed, she continued to kick the officers.  *Id.* at p. 3 No. 9 (admitting Defendants' Undisputed Fact Nos. 15, 16, & 19).

[23]     Affidavit of Officer Lindell Miller at p. 4 Nos. 13-16 (Nov. 21, 2005); Affidavit of Lt. Bruce McDougal at p. 3 Nos. 18 & 20 (Nov. 21, 2005); *see also* Plaintiff's Brief in Support of Response to Defendant's Motion for Summary Judgment at p. 3 No. 9 (Dec. 19, 2005) (admitting Defendants' Undisputed Fact Nos. 14 & 16).

[24]     *Drummond v. City*, 343 F.3d 1052, 1059 (9th Cir. 2003).

claim involving excessive force.[25]   Second, the Plaintiff lacks any evidence to suggest that

the individual defendants had violated the Stillwater Police Department's guidelines or

policies.   According to the Plaintiff, the police department had in its possession training

materials.   But the Plaintiff lacks any evidence to elevate the possession of these materials

into any form of guideline or policy.[26]

---

[25]      In *Tanberg v. Sholtis*, 401 F.3d 1151 (10th Cir. 2005), an arrestee claimed excessive force,
and the Tenth Circuit Court of Appeals held that the police department's standard operating
procedures were irrelevant.   The court explained:

> That an arrest violated police department procedures does not make it more or less
> likely that the arrest implicates the Fourth Amendment, and evidence of the violation
> is therefore irrelevant.   If [the defendant officer] violated the [standard operating
> procedure] governing the use of force in effecting arrest, that fact might well be
> pertinent to the . . . Police Department's future decisions to promote, retain, or
> discipline him; it is not relevant to determining if Plaintiffs' arrest violated the
> reasonableness requirement of the Fourth Amendment.

*Tanberg v. Sholtis*, 401 F.3d 1151, 1163-64 (10th Cir. 2005); *see also Romero v. Board of County
Commissioners*, 60 F.3d 702, 705 (10th Cir. 1995) ("violations of . . . police procedure generally do
not give rise to a § 1983 claim" (citations omitted)).

[26]      In the decision relied upon by the Plaintiff, the court noted:

> [T]he . . . police department had issued a training bulletin . . . *specifically* warning
> officers that "when one or more [officers] are kneeling on a subject's back or neck
> to restrain him, compression asphyxia can result ['t]hat may be a precipitating factor
> in causing death.'" Although such training materials are not dispositive, we may
> certainly consider a police department's own guidelines when evaluating whether a
> particular use of force is constitutionally unreasonable.   As the Fifth Circuit stated,
> "it may be difficult to conclude that the officers acted reasonably if they performed
> an action that had been banned by their department or of whose dangers in these
> circumstances they had been warned."

*Drummond v. City*, 343 F.3d 1052, 1059 (9th Cir. 2003) (citation omitted).   There is no evidence to
suggest that the Stillwater Police Department had issued a training bulletin or any other type of
warning to Lindell Miller, Scott Whitley, or Bruce McDougal.   *See* Plaintiff's Brief in Support of
Response to Defendant's Motion for Summary Judgment at pp. 7, 14 (Dec. 19, 2005) (arguing that
the Defendants' in-house training had "merely 'talked about' positional asphyxia" rather than use

Viewed in their totality, the undisputed facts would foreclose liability under Section 1983 for excessive force.

## II.   Municipal and Supervisory Liability: Claims Against the City of Stillwater and Norman McNickle

The Plaintiff has also sued the City of Stillwater and Norman McNickle based on a failure to train or supervise Officers Miller, Whitley, and McDougal.  But these theories require a constitutional violation by the officer who was improperly trained or supervised.[27] As discussed above, Officers Miller, Whitley, and McDougal did not use excessive force. And the absence of excessive force would insulate the municipality or Chief McNickle from liability for inadequate training or supervision.

## State Law Claims

The Plaintiff has asserted a claim against the City of Stillwater and Defendants Miller, Whitley, and McDougal for negligence.[28]  All of the defendants request the Court to decline jurisdiction over the state claims.  In the alternative, the city argues that it is immune under

---

the written materials).

[27]     *See Trigalet v. City*, 239 F.3d 1150, 1156 (10th Cir. 2001) ("we hold that absent a constitutional violation by the individual police officers whose conduct directly caused plaintiffs' injuries, there can be no municipal liability imposed on the City of Tulsa on account of its policies, customs, and/or supervision with regard to the individual defendants"); *Webber v. Mefford*, 43 F.3d 1340, 1344-45 (10th Cir. 1994) ("A claim of inadequate training, supervision, and policies under § 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation by the person supervised." (citations omitted)), *overruled in part on other grounds*, *Trigalet v. City*, 239 F.3d 1150, 1154 n.2 (10th Cir. 2001).

[28]     In the complaint, Norman McNickle was not named as a defendant on the state law claims.

the Oklahoma Governmental Tort Claims Act.  The Court will exercise its discretion to

adjudicate the state claims and grants the city's request for summary judgment.

I.      Supplemental Jurisdiction Over the State Claims

As discussed above, the Defendants' entitlement to summary judgment removes all

of the federal claims from the suit, and diversity jurisdiction does not exist.  Nonetheless, the

Court has supplemental jurisdiction to adjudicate the remaining state claims.[29]  The Court

can decline to exercise this power when it has "dismissed all claims over which . . . original

jurisdiction" exists.[30]  In determining whether to exercise or decline jurisdiction, the Court

should consider "'judicial economy, convenience, and fairness to the litigants.'"[31]  The

---

[29]     *See* 28 U.S.C. § 1367(a) (2000).

[30]     *See* 28 U.S.C. § 1367(c)(3) (2000).

[31]     *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1550 (10th Cir. 1996) (citation omitted).  Some Tenth Circuit decisions suggest that in the absence of diversity, supplemental jurisdiction should be declined whenever the federal court dismisses all of the federal claims before trial.  *See Bauchman v. West High School*, 132 F.3d 542, 549 (10th Cir. 1997) ("If federal claims are dismissed before trial, leaving only issues of state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.'" (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988))); *Board of County Commissioners v. Geringer*, 297 F.3d 1108, 1115 (10th Cir. 2002) ("the district court's ruling comports with our general admonishment that district courts should dismiss state claims without prejudice after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial" (citations omitted)).  But governing Supreme Court precedents require the lower federal courts to exercise discretion, emphasizing that pretrial dismissal of the federal claims does not automatically require dismissal of state claims.  For example, the Court stated:

In [*United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966)], the Court stated that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."  More recently, we have made clear that this statement does not establish a mandatory rule to be applied inflexibly in all cases.  The statement simply recognizes that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent

12

Defendants apparently believe that these factors weigh against the exercise of supplemental jurisdiction.  The Court disagrees.

Three factors are particularly important here.  First, judicial economy strongly favors the exercise of supplemental jurisdiction. The lawsuit has been pending for over 1½ years and the trial is only 21 days away.  Second, the remaining issues of state law are not novel or complex.[32]  Third, continuation of the federal action would promote fairness to the litigants because of their extensive efforts to litigate the state claims in this forum.[33]

---

> jurisdiction doctrine - judicial economy, convenience, fairness, and comity - will point toward declining to exercise jurisdiction over the remaining state-law claims.

*Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (citations omitted).

[32]    In analogous circumstances, the Tenth Circuit Court of Appeals upheld the exercise of supplemental jurisdiction, stating:

> Declining pendent jurisdiction is appropriate when the court needs a "surerfooted" analysis of state law in an area of particular importance to a state.  These concerns are not implicated here because we are convinced Utah law is conclusive on whether a joint venture has been created and whether the joint venturers are immune from liability on the state law claims under section 35-1-60.

*Sullivan v. Scoular Grain Company of Utah*, 930 F.2d 798, 803 (10th Cir. 1991) (citation omitted).

[33]    The Tenth Circuit Court of Appeals has "expressed concern that district courts be aware of the extent of the litigants' pretrial efforts." *Anglemyer v. Hamilton County Hospital*, 58 F.3d 533, 541 (10th Cir. 1995).  For example, the appeals court noted that "[a] federal court justifiably may retain jurisdiction of the pendent claims if substantial time and energy have been expended on the case prior to disposition of the federal claims." *Jones v. Intermountain Power Project*, 794 F.2d 546, 550 (10th Cir. 1986) (citations omitted), *overruled in part on other grounds*, *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820 (1990); *see also United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002) ("we have suggested that it is appropriate, perhaps even advisable, for a district court to retain supplemented state claims after dismissing all federal questions when the parties have already expended a great deal of time and energy on the state law claims" (citation omitted)).

These factors outweigh any conceivable benefit from a decision to decline supplemental jurisdiction. With a dismissal, the parties could use their discovery to press the remaining claims in state court.[34] But the parties have also expended considerable time and money in the present action on tasks which could require duplication in state court proceedings.

For example, the parties are only two days away from the deadline to submit a final pretrial report. The form for the pretrial report varies in state and federal proceedings.[35] Thus, dismissal could result in wasted efforts to prepare a final pretrial report in federal court.

Likewise, the Court has ruled on the admissibility under Federal Rule of Evidence 702 of deposition testimony by Dr. Kris Sperry and live testimony by Vince O'Neill, Dr. Jeffrey Ho, and Dr. Jeffery Gofton. A decision to decline jurisdiction could require the parties to re-brief the admissibility of opinion testimony by these individuals under Okla. Stat. tit. 12 § 2702 (2001). And the state court would presumably need to reexamine each ruling in light

---

[34]    The Tenth Circuit Court of Appeals has stated:

> Although "the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness" may be relevant in deciding whether or not to exercise supplemental jurisdiction, nothing prevents the parties in this case from agreeing to utilize any discovery already obtained in any future state court proceeding.

*Huntsinger v. Board of Directors*, 35 Fed. Appx. 749, 760 (10th Cir. May 6, 2002) (unpublished op.) (citations omitted).

[35]    *Compare* Rule 5, Rules for District Courts of Oklahoma, *with* W.D. Okla. Local Civil Rule 16.1(b)(1)(B) & Appendix IV.

of the state evidentiary code,[36] which of course has not been applicable to this point in the litigation.[37]

In these circumstances, the Court should exercise its jurisdiction to adjudicate the state claims.

## II.  City's Immunity Under State Law

In part, the city argues that it is immune under the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51 §155(24) (2001).[38]  That section provides that a state's political subdivision is not liable for a loss resulting from the "[o]peration . . . of any . . . jail."[39]  The question here is whether the city's alleged wrongdoing involves the "operation" of a jail. It does.

The statutory language creates "an operational function exemption," which covers all activities "involved in the performance of policy."[40]  These activities involve "the myriad of actions involved in the day to day operation of a prison . . . ."[41]

---

[36]  *See Christian v. Gray*, 65 P.3d 591, 597 (Okla. 2003) ("We have said that federal court decisions may be examined for persuasive value when they construe federal evidence rules with language substantially similar to that in our evidence statutes." (citation omitted)).

[37]  *See* Fed. R. Evid. 101.

[38]  The city also alleges immunity under Okla. Stat. tit. 51 § 155(25) (2001).  The Court need not address the applicability of this provision.

[39]  Okla. Stat. tit. 51 § 155(24) (2001).

[40]  *Medina v. State*, 871 P.2d 1379, 1383 (Okla. 1993).

[41]  *Redding v. State*, 882 P.2d 61, 63 (Okla. 1994).

The Plaintiff's claim against the municipality is based on vicarious liability and improper training and supervision of police personnel. The undisputed evidence is that the loss ultimately occurred through the officers' implementation of their policy to change pretrial detainees into distinctive clothing and to disallow the wearing of pantyhose because of a perceived safety risk.[42] As a matter of law, the officers' implementation of this procedure and the municipality's alleged training and supervision involved activities "in the performance of policy."[43] Accordingly, the Court grants summary judgment to the City of Stillwater on the Plaintiff's state claims.

## Summary

The Court grants summary judgment to the City of Stillwater and Norman McNickle on all claims. The remaining defendants are entitled to summary judgment on the federal claims. Officers Miller, Whitley, and McDougal have not presented a summary judgment argument on the state claims,[44] and they will remain for trial.

---

[42]    Plaintiff's Brief in Support of Response to Defendant's Motion for Summary Judgment at p. 3 No. 9 (Dec. 19, 2005) (admitting Defendants' Undisputed Fact Nos. 12 & 17); Affidavit of Lt. Bruce McDougal at p. 3 No. 20 & p. 4 No. 21 (Nov. 21, 2005).

[43]    *Supra* p. 15 (quoting *Medina v. State*, 871 P.2d 1379, 1383 (Okla. 1993)); *see Purvey v. State*, 905 P.2d 770, 771 (Okla. 1995) (holding as a matter of law that Okla. Stat. tit. 51, § 155(24) encompassed an inmate's "claim of negligence by prison officials in issuing chain saws to prisoners without proper training").

[44]    In the summary judgment motion, the Defendants state that they are requesting "summary judgment as to all claims against them." Defendants' Motion for Summary Judgment (Nov. 21, 2005). But in the Defendants' supplemental brief, the city is the only defendant to present an argument for summary judgment on the state claims. The Court declines to *sua sponte* address the availability of summary judgment to Officers Miller, Whitley, and McDougal on the state claims. *See Quinlan v. Koch Oil Co.*, 25 F.3d 936, 942 (10th Cir. 1994) (holding that the district court had committed reversible error in granting summary judgment on an issue that had not been raised);

So ordered this 6th day of February, 2006.


_____

Robert E. Bacharach
United States Magistrate Judge

---

*Graham v. City*, 859 F.2d 142, 145 (10th Cir. 1988) (*per curiam*) (holding that a *sua sponte* award of summary judgment was improper in light of the absence of notice or an opportunity to respond on the issue).